UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY, ALLIED
INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION, AFL-CIO, CLC,

                Plaintiff
v.                                               **DECISION AND ORDER**
                                                        10-CV-041S

COOKSON AMERICA, INC., and
VESUVIUS USA CORP.,
                Defendants.

## I. INTRODUCTION

Plaintiff, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW"), brings this action under § 301 of the Labor Management Relations Act, 29 U.S.C § 185, alleging that Defendants, Cookson America Inc. and its indirectly wholly owned subsidiary, Vesuvius USA Corp. ("Vesuvius"), breached their collective bargaining agreement ("CBA"). Presently before this Court are each party's dueling motions for summary judgment. (Docket Nos. 25, 26.) For the following reasons, the USW's motion is granted and Defendants' motion is denied.

1

## II. BACKGROUND

**A.     Facts**[1]

The facts of this case are relatively undisputed. Vesuvius operated a steel plant and foundry in Hamburg, New York until it closed in 2008. (Plaintiff's Statement of Facts ("Pl.'s Stmnt."), ¶ 4; Docket No. 25-1.) The USW is a labor organization who represented the employees at the Vesuvius plant. (Id., ¶ 3.) As part of an agreement reached in 1994 between Vesuvius and its employees, employees who (1) were hired before March 15, 1994; (2) retired; and (3) reached the age of 65, would be entitled to a one-time medical benefit of $7,000, called the Retiree Medical Allowance. (Id., ¶ 13; 1994 CBA, Article 16, § 8, p. 27; Docket No. 25-3.) This benefit was carried over to the 1998-2001 and the 2004-2007 CBAs, with the amount increasing from $7,000 to $8,000. (Pl.'s Stmnt., ¶¶ 14, 15.)

In August of 2007, as the 2004-2007 bargaining agreement was set to expire, Vesuvius announced that it would be closing the Hamburg facility in approximately one year. (Id., ¶ 16.) Consequently, the parties negotiated a "Facility Closure and Collective Bargaining Agreement Termination" ("Closure Agreement"). (Id., ¶ 19.) This agreement, *inter alia,* provided that (1) the 2004-2007 CBA would remain in effect until the plant closed and (2) "[Vesuvius] shall honor the Retiree Medical Allowance provision of the CBA." (Closure Agreement, ¶¶ 1, 4; Docket No. 25-4.)

According to plan, the plant shut down in August of 2008. (Pl.'s Stmnt., ¶ 24.) Between that time and December 31, 2010, approximately six retirees, hired before March

---

[1]This Court has accepted facts in each party's statement of facts to the extent that they have not been controverted by the opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

15, 1994, attained the age of 65 and were paid the $8,000 benefit by Vesuvius. (Id., ¶ 28.) However, effective January 1, 2011, Vesuvius notified USW that it would cease making these payments in the future.[2] (Id., ¶ 26.)

This litigation followed.

**B.     Procedural History**

USW filed a complaint in this Court on January 19, 2010. (Docket No. 1.) On February 24, 2010, Defendants filed an answer. (Docket No. 4.) Two weeks later on March 12, 2010, Defendants filed an amended answer. (Docket No. 7.) With leave, on June 16, 2010, USW filed an amended complaint, which Defendants answered on July 2, 2010. (Docket Nos. 19, 21.) Each party moved for summary judgment on March 10, 2011 (Docket Nos. 25, 26) and, after full briefing, this Court took the motions under advisement without oral argument.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[2] At the time this case was filed, there were 36 former Vesuvius employees who had not reached age 65 and who would be eligible for the Retiree Medical Allowance upon reaching that age. (Pl.'s Stmnt., ¶ 27.)

non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

When the parties cross-move for summary judgment, "the standard is the same as that for individual motions for summary judgment." Natural Res. Def. Council v. Evans, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

**B.     Summary Judgment Motions**

Initially it should be noted that Congress specifically authorized this Court to hear cases such as this by passing the Labor Relations Management Act, which provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be

brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

USW has alleged that Defendants committed such a contract violation when, on January 1, 2011, Defendants terminated the Retiree Medical Allowance in breach of the Closure Agreement. Defendants respond and move for summary judgment separately by arguing that (1) the Retiree Medical Allowance did not vest; (2) former employees did not retire from Vesuvius; and (3) the USW lacks standing to bring this suit on behalf of the former employees. Each argument will be discussed below.

First, relying on American Federation of Grain Millers v. International Multi-Food Corp., Defendants argue that, when the plant closed and the 2004-2007 CBA expired, they were free to modify or terminate any retiree medical benefits that it provided. 116 F.3d 976, 980 (2d Cir. 1997). This may have been true if they did not enter into the Closure Agreement, which superceded the 2004-2007 CBA. Reading the Closure Agreement as Defendants would have this Court read it renders several aspects of the document superfluous.

The first paragraph of the Closure Agreement states that the 2004-2007 CBA will remain in effect until the plant is closed. If that provision consisted of the entirety of the document, Defendants might be able to argue that the 2004-2007 CBA had expired and they were therefore free to modify its terms under Second Circuit precedent. But, of course, the Closure Agreement, which is itself a form of a collective bargaining agreement, goes on to provide for further rights and obligations, among them the promise that Vesuvius "shall honor the Retiree Medical Allowance" provision of the 2004-2007 CBA. The

5

only sensible, and indeed lawful, interpretation of this clause is that Vesuvius has represented that it will pay this benefit to all eligible employees even after the plant closes and the 2004-2007 CBA expires. Defendants argue that this clause simply meant that they had an obligation to pay the Retiree Health Benefit until the plant closed. But that obligation was already present in the 2004-2007 CBA, which by the express terms of the Closure Agreement, was effective until the plant closed. Defendants' interpretation thus conflicts with both logic and the law because it renders the representation that they would honor the Retiree Medical Benefit entirely superfluous. See Aeronautical Indus. Dist. Lodge 91 of Int'l. Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney, 230 F.3d 569, 576 (2d Cir. 2000) ("[A]s with all contracts, courts should attempt to read CBAs in such a way that no language is rendered superfluous"); see also Kinek v. Paramount Comms., Inc., 22 F.3d 503, 509 (2d Cir. 1994) (well established principles of contract construction "require that all provisions of a contract be read together as a harmonious whole"). Simply put, there would be no need to include this provision if it did not apply post-closing. Accordingly, their motion for summary judgment on this ground is denied.

Defendants next argue that the employees in question did not "retire" from Vesuvius; instead they were "laid-off," making them ineligible for the Retiree Medical Benefit. But this argument suffers from the same fatal flaw as their first argument. If Defendants meant for the Retiree Medical Benefit to apply to only those employees who "retired" before the plant closed and not those who were "laid-off" after the plant closed, there would be no need to include the separate promise indicating that they would honor a provision contained in the CBA, which already covered the only employees who, under Defendants' definition of the

6

word, were eligible to "retire." Once again, Defendants interpretation renders this promise superfluous, contrary to established contract law principles. Their motion on this ground is therefore denied.[3] See id.

Finally, Defendants argue that the USW, as a union, lacks standing to represent its former union members. The Second Circuit has, in dicta, expressed doubt that a union has standing to "assert the rights of individual retirees." Schweitzer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, 29 F.3d 83, 86 (2d Cir. 1994) (citing Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 181 n. 20, 92 S. Ct. 383, 30 L .Ed. 2d 341 (1971). Yet by contrast, citing the same case and relying on the very same language, the Sixth Circuit held that the Court in Pittsburgh Plate Glass suggested precisely the opposite: that while the union has no duty to represent retirees, it may choose to do so if it wishes. See Int'l Union, United Auto., Aerospace, & Agricultural Implement Workers of Am. v. Yard-Man, Inc., 716 F.2d 1476, 1484 (6th Cir.1983).

The Third Circuit has sensibly held that a "union has a legitimate interest in protecting the rights of the retirees and is entitled to seek enforcement of the applicable contract provisions." United Steelworkers of Am., AFL CIO v. Canron, Inc., 580 F.2d 77,

---

[3]To the extent there is any ambiguity about whom the provision was meant to apply to, the only extrinsic evidence emphatically suggests that the Retiree Medical Allowance was meant to cover all otherwise eligible employees, including those who were forced to retire because of the closure. Michael Maddex, former plant manager and Vesuvius negotiator, stated that "there was no doubt in [his] mind" and that it was "certainly [his] intent . . . in proposing the language" that the provision was meant to cover all retirees, including those employees who retired because of the shut-down. (Maddex Affidavit, ¶ 11; Docket No. 29-2.) Thus, even if the provision's language could be considered ambiguous, summary judgment in USW's favor would still be appropriate. See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 159 (2d Cir. 2000) (Sotomayor, J.) (summary judgment appropriate where there exists a contractual ambiguity, but the relevant extrinsic evidence is so one-sided as to compel a finding as a matter of law, or where one party fails to point to any relevant extrinsic evidence supporting its interpretation of the language.)

80-81 (3d Cir. 1978). Defendants argue that the Canron court only came to this conclusion because the union also represented current employees, which is not the case here. But, significantly, the USW was a signatory to the Closure Agreement. And further, the Canron court's finding accords with long-standing contract principles and recent decisions, in this circuit and elsewhere, affirming a union's right to sue. See, e.g., Frontier Comms. v. Int'l Bhd. of Elec. Workers, Local 503, No. 07–10327(GEL), 2008 WL 1991096, at *3 (S.D.N.Y. May 6, 2008) (finding that union has standing to litigate on its own behalf and that "it is 'axiomatic' that a party to an agreement has standing to sue a counter-party who breaches that agreement, even where some or all of the benefits of that contract accrue to a third party"); Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp 173, 196 (S.D.N.Y. 2008) (party to contract has standing to sue even though third-party beneficiary also has standing to sue); accord Int'l Bhd. of Elec. Workers, Local 1245 v. Citizens Telecomms. Co., 549 F.3d 781, 789-790 (9th Cir. 2008) (a retiree's individual standing does not divest union of its own standing); Kop-Flex Emerson Power Transmission Corp. v. Int'l Ass'n of Machinists & Aerospace Workers Local Lodge No. 1784, Dist. Lodge No. 4, --- F. Supp. 2d ----, No. RDB-11-0120, 2012 WL 34018, at *9 (D. Md. Jan. 6, 2012) ("[I]t is clear that the Union itself, as party to the CBA in question, may litigate or arbitrate disputes arising out of that agreement").

These cases conspicuously stand for the proposition that the USW, as party to contract, has standing to sue even if its members are all retired. On the back of these prudent conclusions, this Court finds that USW, as a party to the contract and as a party who has a legally protected interest in the Agreement, has standing to bring to this claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351

(1992) (standing acquired where there is an "invasion of a legally protected interest"). As a result, Defendants' motion on this ground is denied.

Having found Defendants' arguments unpersuasive and recognizing that Defendants contracted to provide the Retiree Medical Allowance to all eligible employees, including those who retired due to the plant closing, it is evident that Defendants breached the Closure Agreement when it ceased making those payments. USW's motion for summary judgment is therefore granted and Defendants' motion is denied.

## IV. CONCLUSION

For the following reasons, USW's motion for summary judgment is granted and Defendants' motion is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that USW's Motion for Summary Judgment (Docket No. 25) is GRANTED.

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 26) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:     February 25, 2012
           Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court